WULFSBERG REESE COLVIG & FIRSTMAN
PROFESSIONAL CORPORATION
Eric J. Firstman – 111534
Gregory R. Aker – 104171
Michael J. Higgins – 151549
Kaiser Center
300 Lakeside Drive, 24th Floor
Oakland, CA 94612-3524
Telephone: (510) 835-9100
Facsimile: (510) 451-2170
Email: efirstman@wulfslaw.com

Attorneys for Plaintiffs
CITY OF ALAMEDA, and its
Department, ALAMEDA POWER & TELECOM

OFFICE OF THE CITY ATTORNEY
CITY OF ALAMEDA
Teresa L. Highsmith – 155262
2263 Santa Clara Avenue, Room 280
Alameda, California 94501
Telephone: (510) 747-4750
Facsimile: (510) 747-4767
Email: thighsmi@ci.alameda.ca.us

Attorneys for Plaintiffs
ALAMEDA PUBLIC FINANCING AUTHORITY, and
ALAMEDA PUBLIC IMPROVEMENT CORPORATION

**JCS**

**C 08 4575**

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALAMEDA, CALIFORNIA, on behalf of itself and ALAMEDA POWER & TELECOM, a department of the City of Alameda; ALAMEDA PUBLIC FINANCING AUTHORITY; and ALAMEDA PUBLIC IMPROVEMENT CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>NUVEEN MUNICIPAL HIGH INCOME OPPORTUNITY FUND; THE NUVEEN MUNICIPAL TRUST; and NUVEEN ASSET MANAGEMENT, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT FOR DECLARATORY RELIEF
1883-002\2225972.1

## I. JURISDICTION

1. This action arises under the securities laws of the United States, and in particular, Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. §78j, and the rules promulgated under Section 10 of such Act, in particular Rule 10b-5, 17 C.F.R. §240.10b-5. The Court thus has original federal question jurisdiction of this matter under 28 U.S.C. Section 1331.

2. In addition, as more fully alleged below, Plaintiffs are citizens of the State of California, and Defendants are citizens of the States of Illinois, Massachusetts or Delaware. The amount in controversy in this case, exclusive of interest and costs, exceeds the sum or value of $75,000. The Court therefore also has original diversity jurisdiction of this matter under 28 U.S.C. Section 1332.

## II. PARTIES

3. City of Alameda is a charter city and municipal corporation organized and existing under its charter and the Constitution and laws of the State of California. Alameda Power & Telecom is a department of the City of Alameda.

4. Alameda Public Financing Authority is a joint powers authority duly organized and existing under the laws of the State of California.

5. Alameda Public Improvement Corporation is a nonprofit public benefit corporation duly organized and existing under the laws of the State of California.

6. Plaintiffs City of Alameda, Alameda Public Financing Authority, and Alameda Public Improvement Corporation will collectively be referred throughout this Complaint as "Plaintiffs" or "City."

7. Nuveen Municipal High Income Opportunity Fund is a mutual fund organized and existing under the laws of the State of Massachusetts with its principal place of business in the State of Illinois.

8. The Nuveen Municipal Trust is a mutual fund organized and existing under the laws of the State of Massachusetts with its principal place of business in the State of Illinois.

9. Nuveen Asset Management, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Illinois.

10. Defendants Nuveen Municipal High Income Opportunity Fund, The Nuveen Municipal Trust, and Nuveen Asset Management, Inc., will be referred to throughout this Complaint as the "Note Holders" or, generally, "Defendants."

## III. VENUE

11. Venue is proper because, as more fully alleged below, a substantial part of the events or omissions alleged as giving rise to the claim occurred in the Northern District of California. Venue in the Northern District of California is therefore proper under 28 U.S.C. §§ 1391(a) and 1391(b).

## IV. BACKGROUND FACTS

### A. The Transaction and Principal Documents

12. This action arises from a public financing transaction involving the construction and operation of a citywide fiber optic coaxial broadband telecommunications system (the "Telecom System") in the City of Alameda, California (the "City"). Work on the Telecom System began in the late 1990's under a design-build contract with Vectren Communication Services. The City purchased Vectren's interest in the Telecom System in 2002 and took over responsibility for completing the project. The City completed the Telecom System in June, 2005, though at a cost substantially in excess of that anticipated.

13. In 2004, in order to finance completion of the work by the City, the Alameda Public Financing Authority issued a series of Revenue Bond Anticipation Notes (the "Notes"), in the total sum of $33 million. U.S. Bank is named as Trustee by the indenture under which the Notes were issued. Defendants are purchasers of the Notes (the "Note Holders").

14. The Notes carried a five-year term, with a maturity date of June 1, 2009, and an above-market interest rate of seven percent per annum, tax free. Repayment of the Notes was limited solely to Net Revenues generated by the Telecom System, as more fully alleged below. The Notes were unrated and uninsured, and reflecting the risk in the transaction and the uncertain performance of the underlying Telecom System, the 7% interest payable over the five year term of the Notes was reserved from the proceeds of the transaction as capitalized interest, ensuring payment of all scheduled interest for the Notes' five-year term. Beyond the payment of the reserved

1 or "capitalized" interest, any return on the Notes or profitability of the underlying Telecom System
2 was, as disclosed to Note Holders at the outset of the transaction, substantially uncertain.

3     15. In addition to the Notes themselves, the transaction included, among other contract
4 documents, the following:

5     a. The Series 2004 Installment Sale Agreement, dated as of April 21, 2004, between the
6 Alameda Public Improvement Corporation and Alameda Power & Telecom;

7     b. The Indenture of Trust, dated April 21, 2004, between the Alameda Public Financing
8 Authority, the Alameda Public Improvement Corporation, Alameda Power & Telecom, and U.S.
9 Bank National Association, as trustee;

10     c. The Subordination and Intercreditor Agreement, dated April 21, 2004, between U.S.
11 Bank National Association, Vectren Communications Services, Inc., and Alameda Power &
12 Telecom;

13     d. The Note Purchase Agreement dated April 8, 2004, between the Alameda Public
14 Financing Authority, Alameda Power & Telecom, and the Underwriter for the Notes transaction;
15 and

16     e. The Official Statement dated April 8, 2004, provided to all prospective investors in the
17 Notes transaction.

18     16. As an investment transaction subject to substantial risk, a fundamental assumption
19 disclosed to all potential buyers from the beginning was that all remaining payments under the
20 Notes depend upon the net revenue generated by the City's operation of the Telecom System.
21 Section 5.2 of the Installment Sales Agreement specifically provides:

22     *"Alameda P&T's obligation to pay the Installment Payments shall be a*
23     *special obligation limited solely to Net Revenues and amounts payable as*
24     *Capitalized Interest. Under no circumstances shall Alameda P&T be*
25     *required to advance any moneys derived from any source of income other*
26     *than the net Revenues and Capitalized Interest and other sources specifically*
27     *identified herein for the payment of the Installment Payments, nor shall any*
28     *other funds or property of Alameda P&T be liable for the payment of the*

1     *Installment Payments."*

2 The Note Holders thus are not entitled to any payment unless the Telecom System generates
3 revenues above Net Revenues (revenues above operating costs), a key assumption that was fully
4 disclosed to all purchasers at the outset.

5     17.     The Notes, moreover, are non-recourse; the City's sole financial obligation under the
6 Notes is to pay to the Note Holders whatever net revenue the Telecom System generates, if any.
7 Although the Note Holders are entitled to the proceeds of a sale or refinancing of the Telecom
8 System system upon the Notes' 2009 maturity date, the City is under no obligation to arrange any
9 such transaction. If, by the maturity date, the Notes are not refinanced and the Telecom System is
10 not sold, the City is to operate the System for the Note Holders' benefit for a period of ten years.

11 **B.   Risk Factors Disclosed**

12     18.     Extensive written disclosures were provided to all prospective buyers of the Notes,
13 fully detailing the nature of the transaction and risks involved. Among those documents was the
14 Official Statement, alleged above. Prospective buyers, including the Note Holders, were
15 specifically informed that payment of the Notes at maturity depended upon the success of the
16 Telecom System or its sale or refinancing at that time, if possible.

17     19.     Further, the Official Statement specifically informs potential investors of the
18 following:

19     *"[N]o revenues or assets of Alameda P&T other than those of the Telecom*
20     *System (i.e., no revenues or assets of Alameda P&T related to its electric utility*
21     *facilities or distribution systems) are pledged to the payment of the Notes or*
22     *any obligation securing the Notes."*

23 The Official Statement further provides:

24     *"If Alameda P&T and the Authority cannot refinance the Telecom System and*
25     *repay the Notes at their maturity, owners of the Notes will have no recourse to*
26     *the City or to any other assets or revenues of Alameda P&T (including, without*
27     *limitation, the electric utility and facilities), except the Net Revenues pledged*
28     *for the Installment Payments and any available proceeds of the sale of the*

COMPLAINT FOR DECLARATORY RELIEF     4
1883-002\2225972.1

1 *Telecom System."*

2 As represented in the documents signed at purchase, moreover, the buyers of the Notes, including the Note Holders, were sophisticated investors with substantial experience in complex business and financial transactions.

## C. The Changing Economic Environment

20. Since issuance of the Notes in 2004, the competitive landscape in the telecommunications industry has changed dramatically. Most significant has been intense competition from national providers of video, voice and internet services, such as Comcast, AT&T, Dish Network, Direct TV, and others. In addition, the development of new technology has accelerated, with innovations and enhanced services offered by the leading national providers, such as Comcast's "triple play," a bundle of video, internet and telephone services offered through cable lines. Meanwhile, these national competitors have also realized significant economies of scale in labor costs, and in purchasing of programming, that small municipal providers such as the City could not match.

21. At this stage, the City projects that it may realize only a small profit on Telecom System operating revenues in 2009. The City's predicament is not uncommon. With increased competition from the dominant institutional players, the economic prospects for small telecommunications operators are becoming increasingly bleak nationwide.

22. Beginning in late 2004 and early 2005, and continuing throughout the intervening years thereafter, the City has provided the Note Holders and/or their representatives with regular reports on the financial condition of the Telecom System. These included (a) monthly subscriber reports, updating monthly subscriber counts, (b) quarterly reports, and (c) annual financial statements. In addition, the City has held open public meetings at which information regarding the Telecom System and its operation was disclosed.

## D. The City's End-of-Term Options

23. Beginning in late 2007, the City began exploring its options for the sale, refinancing or continued operation of the Telecom System after the maturity of the Notes on June 1, 2009. The City engaged a leading telecommunications consultant to assist in evaluating its end-of-term

1 options, including finding a potential buyer for the System. Throughout the evaluation process, the
2 City has kept the Note Holders closely informed of the progress of discussions and has invited their
3 input. In addition, the City has attempted to engage the Note Holders in discussions regarding a
4 possible refinancing of the System, to no avail, with the Note Holders refusing to consider any such
5 alternatives.

6     24. As a result of the consultant's efforts, the City received several preliminary bids and
7 two final bids for sale of the Telecom System. The price offered is consistent with industry
8 guidelines based upon revenues, programming costs and wage costs, but lower than the par value of
9 the Notes.

10     25. In accordance with the financing documents, the City has repeatedly asked the Note
11 Holders to consent to a sale of the Telecom System. The City has provided whatever information
12 the Note Holders have reasonably requested regarding the sale. Despite these efforts, the Note
13 Holders have rejected the City's requests. Recently, in a final effort to reach a resolution of the
14 dispute, the City and Note Holders participated in a full-day mediation session, at the conclusion of
15 which the parties were unable to resolve their disputes.

### E. The Note Holders' Meritless Threats of Securities Law Claims

17     26. Instead of negotiating with the City in good faith, the Note Holders have threatened
18 litigation, claiming without any basis that they were not informed of the risks involved in their
19 investment in the Notes. Despite the extensive disclosures alleged above, the Note Holders have
20 served the City with an extensive Public Records Act demand, and threatened the City with claims
21 based on violations of the federal securities laws, including federal Rule 10b-5. The Note Holders
22 have raised such claims in a transparent effort to increase their negotiating leverage in discussions
23 with the City over sale of the Telecom System and to justify their unreasonable refusal to consent to
24 the sale.

25     27. On September 24, 2008, the Note Holders served the City with a Public Records Act
26 request, in an attempt to find factual support for the securities law claims they have threatened. The
27 Note Holders have openly confirmed that their actions are directed at establishing claims under the
28 federal securities laws.

## V. CLAIM FOR DECLARATORY RELIEF

### [28 U.S.C. Section 2201(a)]

### Against All Defendants

28. Plaintiffs reallege and fully incorporate in this claim for relief each of the allegations of paragraphs 1 through 27, alleged above, as though fully set forth herein.

29. An actual controversy has arisen and now exists between Plaintiffs and Defendants relating to the following questions:

a. Whether the Note Holders received disclosure of all material facts, in accordance with the federal securities laws, including the risks involved in the investment transaction, at the time they purchased the Notes, based upon the Official Statement they received, as alleged above, and related disclosure documents.

b. Whether the Note Holders were specifically warned of the material risks and uncertainties in the investment transaction, including cautions specifically directed to "forward-looking statements" contained in the disclosure materials.

c. Whether, from 2005 through 2008, the Note Holders continued to receive disclosure relating to the financial condition of the Telecom System after they purchased the Notes, thus placing them on notice of any potential claims, or reasons to try to change or restructure their investment, based, *inter alia*, upon monthly, quarterly and annual reports, and public meetings, at which the financial condition of the Telecom System was discussed in detail and through which Note Holders were given a full and fair opportunity to comment on the manner in which their investment was being managed.

d. Whether any potential claims by the Note Holders are barred by the applicable statutes of limitations, by the provisions of the California Government Claims Act, or by the doctrines of waiver and ratification, in that the Note Holder had knowledge of all facts at least as early as 2005 and failed to raise any claims while choosing to reap the benefit of their investment, which included seven percent tax-free interest.

e. Whether there is any legitimate basis for the Note Holders to refuse to consent to a sale of the Telecom System, on the terms that have been offered, based upon meritless securities claims.

30. A declaratory judgment is necessary in that Plaintiffs contend:

(a) the Note Holders received full disclosure of all material facts relating to the transactions, including the substantial risks involved in purchasing the Notes, at the time of the Note purchase transaction in 2004, in full accordance with federal securities laws;

(b) the Note Holders were specifically warned of the risks involved in their investment and explicitly cautioned regarding the disclosures' forward-looking statements;

(c) the Note Holders continued to receive full disclosure of all material facts, including the financial condition of the Telecom System, at all times after the Notes were purchased;

(d) even if any legitimate claims did exist, the Note Holders are barred from pursuing them by the statute of limitation and by the California Government Claims Act;

(e) a sale of the Telecom System on the terms that have been offered are in the best interests of the City and the Note Holders, and there is no basis for the Note Holders to refuse to provide their consent.

31. Defendants dispute and deny each of the contentions set forth above. In particular, Defendants contend that the City did not provide full disclosure of the material facts and that, therefore, Defendants may have claims for violation of the federal securities laws, including Rule 10b-5, as alleged above.

32. The City disputes and denies Defendants' claims as wholly without merit.

WHEREFORE, Plaintiffs pray for a declaratory judgment against Defendants as follows:

A. That the Court declare the respective rights and duties of Plaintiffs and Defendants as to each of the issues set forth and alleged in paragraphs 29 and 30, above;

B. That Plaintiffs be awarded their costs and expenses in this action; and

C. For such other and further relief as the Court deems just and proper.

DATED: October 1, 2008

WULFSBERG REESE COLVIG & FIRSTMAN
PROFESSIONAL CORPORATION

By _____
ERIC J. FIRSTMAN

Attorneys for Plaintiffs
CITY OF ALAMEDA, and its Department,
ALAMEDA POWER & TELECOM

| | |
|---|---|
| DATED: October 1, 2008 | OFFICE OF THE CITY ATTORNEY<br>CITY OF ALAMEDA<br><br>By _/s/ Teresa L. Highsmith_<br>TERESA L. HIGHSMITH<br><br>Attorneys for Plaintiffs<br>ALAMEDA PUBLIC FINANCING AUTHORITY, and<br>ALAMEDA PUBLIC IMPROVEMENT CORPORATION |

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

| | |
|---|---|
| DATED: October 1, 2008 | WULFSBERG REESE COLVIG & FIRSTMAN<br>PROFESSIONAL CORPORATION<br><br>By _/s/ Eric J. Firstman_<br>ERIC J. FIRSTMAN<br><br>Attorneys for Plaintiffs<br>CITY OF ALAMEDA, and its Department,<br>ALAMEDA POWER & TELECOM |
| DATED: October 1, 2008 | OFFICE OF THE CITY ATTORNEY<br>CITY OF ALAMEDA<br><br>By _/s/ Teresa L. Highsmith_<br>TERESA L. HIGHSMITH<br><br>Attorneys for Plaintiffs<br>ALAMEDA PUBLIC FINANCING AUTHORITY, and<br>ALAMEDA PUBLIC IMPROVEMENT CORPORATION |

Law Offices: WULFSBERG REESE COLVIG & FIRSTMAN PROFESSIONAL CORPORATION, KAISER CENTER, 300 LAKESIDE DRIVE, 24TH FLOOR, OAKLAND, CALIFORNIA 94612-3524, TELEPHONE (510) 835-9100